2. In order to establish an *alibi*, two things are necessary: first, that the state of facts relied upon be such that if true it was impossible for the accused to have been at the scene of the offence when it was committed; and secondly, that this state of facts should be proved to the reasonable satisfaction of the jury. It need not be proved beyond a reasonable doubt; much less is it requisite that the evidence should show that it was impossible for the alleged facts to be false or fabricated. *Judgment reversed.*

June 4, 1894.

Indictment for murder. Before Judge BARTLETT. Bibb superior court. November term, 1893.

R. L. ANDERSON and W. J. GRACE, for plaintiff in error. J. M. TERRELL, attorney-general, and W. H. FELTON, Jr., solicitor-general, *contra.*

---

SMITH *v.* THE STATE.

1. In view of the whole charge as given, there was no error in any of the instructions complained of, nor in refusing to charge as requested.
2. The evidence warranted the jury in rejecting the theory of accidental drowning and in finding that the accused drowned his wife in the manner charged in the indictment, and the court did not err in denying a new trial. *Judgment affirmed.*

SIMMONS, J., dissenting. The evidence tends only to raise a suspicion of guilt. It is altogether circumstantial, and does not exclude every other reasonable hypothesis than the guilt of the accused. It does not show his guilt beyond a reasonable doubt. The law does not sanction a conviction on suspicion, however strong it may be.

June 4, 1894.

Indictment for murder. Before Judge BARTLETT. Bibb superior court. November term, 1893.

Will Smith was indicted for the murder of his wife by shoving her into a pool of water and drowning her. He was convicted with a recommendation to life imprisonment, and his motion for a new trial was overruled. It appeared from the evidence, among other things, that he and his wife were seen going together in the direc-

tion of the pool in which she was drowned, between 5 and 6 o'clock on a morning in June. About two hours afterward, he came to where men were working on a railroad, stated that his wife was drowned, and asked them to help get her out. She was found standing in the pool (which was about six feet deep) with her head bent forward in a stooping position. Some time after she was taken out, a small wound was found in her head, as if made by some sharp instrument, the depth of the incision not appearing. It was proved that defendant could swim. He had some months before quarrelled with his wife; and it seems that he had on a previous occasion pushed her into a lake. There was other evidence that they got along well and peaceably together. He appears to have made several contradictory statements; and so far as the evidence discloses, his feelings were not excited by the discovery of his wife drowned, if the drowning was accidental, as claimed in his statement to the jury.

J. L. ANDERSON, M. G. OGDEN and G. S. JONES, for plaintiff in error. J. M. TERRELL, attorney-general, and W. H. FELTON, Jr., solicitor-general, *contra.*